**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| KEVIN D. MILLER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    No. 06 C 2883 |
| | ) |
| TRANS UNION LLC, et al., | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION**

Plaintiff, Kevin D. Miller, filed this action asserting claims under the Fair Credit Reporting Act ("FCRA") and Illinois law. He alleges that defendants Trans Union LLC, ("TransUnion"), Experian Information Systems, Inc. ("Experian"), and Supportkids, Inc. ("Supportkids") willfully and negligently violated the FCRA by respectively disclosing and obtaining his consumer report for impermissible purposes. Plaintiff further asserts that in violating the FCRA, defendants also violated two Illinois consumer-protection statutes and committed the tort of invasion of privacy.

Plaintiff has filed a motion for "partial summary judgment" on the issue of whether defendant Supportkids had a "permissible purpose" under 15 U.S.C. § 1681b(a) to access his consumer report. Supportkids has filed a cross-motion for summary judgment, arguing that it is entitled to summary judgment on all counts because it had a permissible purpose under 15 U.S.C. § 1681b(a)(3)(A) to

access the report. (Def. Mem. S.J. at 7.) Defendants Experian and TransUnion were served with the parties' respective motions. They have elected not to join in Supportkids's motion. For the reasons discussed below, both of the summary judgment motions are denied.[1]

## BACKGROUND

The relevant facts are taken from the parties' L.R. 56.1 filings.[2] Only those facts or additional facts that comply with L.R. 56.1 are considered in resolving these motions. Bordelon v. Chicago Sch. Reform Bd. of Trs., 233 F.3d 524, 527 (7th Cir. 2000). Where the parties disagree over relevant facts, we will set forth the competing versions; genuine factual disputes are resolved in the non-movant's favor. Foley v. City of Lafayette, 359 F.3d 925, 928 (7th Cir. 2004).

Plaintiff is a natural person and a citizen of the state of Indiana. (Def. 56.1 SAF ¶ 25.) Defendant Supportkids is a Texas corporation; its principal place of business is Austin, Texas. (Id. ¶ 6.) Plaintiff and Supportkids have been acquainted with

---

[1]    Following the submission of the respective motions and Local Rule 56.1 ("L.R. 56.1") factual statements, both parties submitted motions to strike portions of the other party's respective L.R. 56.1 submissions. These motions to strike are denied as moot.

[2]    Because both sides moved for summary judgment, there are a number of L.R. 56.1 filings associated with the cross-motions: (1) plaintiff's Statement of Facts and Exhibits (Pl. 56.1 SOF); (2) defendant's Response and Statement of Additional Facts (Def. 56.1 SAF); (3) plaintiff's Response to defendant's Statement of Additional Facts (Pl. Resp. Def. 56.1 SAF); (4) defendant's Statement of Facts and Exhibits (Def. 56.1 SOF); (5) plaintiff's Response to defendant's Statement of Facts (Pl. 56.1 Resp.); (6) plaintiff's Statement of Additional Facts (Pl. 56.1 SAF); and (7) defendant's Response to plaintiff's Statement of Additional Facts (Def. Resp. Pl. 56.1 SAF).

each other for several years because Supportkids has been retained by two women on separate occasions to collect child-support payments from plaintiff.

In August 1999, Angela Miller, plaintiff's ex-wife and the mother of Kevin Y. Miller, plaintiff's biological son, entered into a written agreement authorizing Supportkids to collect any and all past-due support payments from plaintiff. (Def. 56.1 SAF ¶ 28.) On or about October 13, 2004, Alisa Sidbury, mother of Kiona Sidbury, plaintiff's biological daughter, entered into a similar written agreement with Supportkids.[3] (Pl. Resp. Def. 56.1 SOF ¶ 47; Def. 56.1 SAF ¶ 33.)

Supportkids requested and received plaintiff's consumer report from TransUnion on March 25, 2005 and from Experian on October 14, 2004 and October 13, 2005. (Id. ¶¶ 12-13.) Supportkids maintains that it accessed plaintiff's consumer report in order to collect a debt on Alisa Sidbury's behalf. (Def. 56.1 SOF ¶ 35.) Plaintiff does not deny that he owes AS money; rather, he maintains that a child-support debt is not a "credit transaction" and thus Supportkids lacked a permissible purpose to access his consumer report. Plaintiff further contends that, even if he was indebted

---

[3] Plaintiff maintains that Supportkids's proof of the contractual relationships is inadmissable hearsay. Plaintiff's objection is overruled. The contracts are admissible under Fed. R. Evid. 803(6) as business records because the affidavits of Dalen Frederickson, Supportkids's vice president of strategic development, establish that the documents were made contemporaneously with the occurrence of the matters set forth, the documents were prepared in the course of a regularly conducted business activity, and it was Supportkids's regular practice to create these documents. (See First Frederickson Aff. ¶¶ 2, 5, 11; Second Frederickson Aff. ¶ 4.)

to AS, Supportkids obtained his consumer report under false
pretenses. According to plaintiff, Supportkids's true motivation
was to retaliate against him for filing a False Claims Act suit
against Supportkids in September 2003. (Pl. 56.1 SAF ¶ 48.)

Plaintiff became aware of Supportkids's requests in April 2006
(Def. 56.1 SAF ¶ 11) and filed the instant action on May 24, 2006.

**Legal Standard for Summary Judgment**

Rule 56(c) provides that summary judgment is proper where "the
pleadings, depositions, answers to interrogatories, and admissions
on file, together with the affidavits, if any, show that there is
no genuine issue as to any material fact and that the moving party
is entitled to a judgment as a matter of law." Fed. R. Civ. P.
56(c). In determining whether a genuine issue of material fact
exists, a district court views the record and all reasonable
inferences drawn therefrom in the light most favorable to the
nonmovant. <u>Foley</u>, 359 F.3d at 928.

**The Respective Summary Judgment Motions**

Plaintiff has moved for "partial summary judgment" on the
issue of whether Supportkids had a permissible purpose to obtain
his consumer report. Supportkids has filed a cross-motion for a
summary judgment that it had a permissible purpose to obtain
plaintiff's consumer report, which it argues is a complete defense
to all of plaintiff's claims.

The respective motions address the complex interaction of

different provisions of the FCRA.  The legal issues are further complicated by legislative amendments to the FCRA, the impact of which has not been thoroughly considered by the judiciary or the Federal Trade Commission ("FTC").  Before dealing with the specific legal issues raised by the motions, it will be useful to discuss the text, history, and structure of the relevant FCRA provisions.

### Statutory Context for the Summary Judgment Motions

"Congress enacted the FCRA in 1970 to promote efficiency in the Nation's banking system and to protect consumer privacy."  TRW Inc. v. Andrews, 534 U.S. 19, 23 (2001).  The statutory requirement that a person have a "permissible purpose" prior to requesting or receiving a consumer report is an attempt to balance the consumer's privacy interests with society's interest in the efficient provision of financial services.  Id.

### "Permissible Purposes" Under § 1681b

In its present form, 15 U.S.C. § 1681b(f) provides that "[a] person shall not use or obtain a consumer report for any purpose unless (1) the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under this section; and (2) the purpose is certified in accordance with [15 U.S.C. § 1681e] by a prospective user of the report through a general or specific certification."  Under this provision, any person who furnishes or obtains a consumer report must have a "permissible purpose" as defined by the statute.

15 U.S.C. § 1681b(a), which sets forth the "permissible purposes," provides in relevant part:

> Subject to subsection (c) of this section, any consumer reporting agency[4] may furnish a consumer report under the following circumstances and no other:
> ...
> (3) To a person which it has reason to believe—
> (A) intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer; ....

The FTC's "FCRA Commentary" states that a person attempting to collect a child-support debt has a permissible purpose under § 1681b(a)(3)(A). See 16 C.F.R. pt. 600, App. (1993). The FTC's position with respect to child-support obligations is predicated upon its "judgment creditor theory," under which the credit relationship required by § 1681b(a)(3)(A) is deemed to exist when a consumer report is used by (or on behalf of) a judgment creditor to collect an established debt. See Federal Trade Commission, FCRA Staff Opinion: Brinckerhoff-Bauchner, Aug. 5, 1998 (available at http://www.ftc.gov/os/statutes/fcra/bauchner.htm) (last visited February 27, 2007). A judgment holder is afforded "a permissible purpose under [§ 1681b(a)(3)(A)] by treating the debtor-creditor relationship established by a court action the same as a consensual debtor-creditor relationship." Id. The FTC's "FCRA Commentary" took the "judgment creditor theory" one step further in applying it

---

[4]    While 15 U.S.C. § 1681(b)(a) only refers to "any consumer reporting agency," the subsequent addition of 15 U.S.C. § 1681b(f) means that users of information are also governed by this provision. Cole v. U.S. Capital, Inc., 389 F.3d 719, 731 n.14 (7th Cir. 2004).

to the child-support context. According to the FTC, a person who is owed court-ordered child support is in the same position as a judgment creditor and thus should have the same rights to request and receive a consumer report. 16 C.F.R. pt. 600, App. (1993).

When the FTC developed the "judgment creditor theory," the FCRA did not define the terms "credit" or "creditor." In December 2003, Congress enacted the Fair and Accurate Credit Transactions Act of 2003 ("FACTA"), Pub. L. No. 108-159. A section of FACTA adds to FCRA definitions of "credit" and "creditor." As a result, the FCRA now defines "credit" as "the right granted by a creditor to a debtor to defer payment of debt or to incur debts and defer its payment or to purchase property or services and defer payment therefor" and "creditor" as "any person who regularly extends, renews, or continues credit." 15 U.S.C. § 1691a(d)-(e). Neither the FTC nor the judiciary has considered how the new definitions of "credit" and "creditor" impact the FTC's position that a person attempting to collect a child-support debt has a permissible purpose under § 1691b(a)(3)(A).

**Liability Under §§ 1681n-o**

Prior to 1996, the text of 15 U.S.C. § 1681n applied only to consumer reporting agencies. However, in many jurisdictions, a violation of 15 U.S.C. § 1681q, a related provision that criminalizes the act of knowingly and willfully obtaining information under false pretenses from a consumer reporting agency,

constituted a basis for civil liability under 15 U.S.C. § 1681n. Auriemma v. Montgomery, 860 F.2d 273, 274 n.1 (7th Cir. 1988). Furthermore, § 1681q's prohibition with respect to "false pretenses" was viewed as encompassing the act of obtaining a consumer report without a permissible purpose. See, e.g., Pappas v. City of Calumet City, 9 F. Supp. 2d 943, 946 (N.D. Ill. 1998).

Section 1681n(a), added to the FCRA by the Consumer Credit Reporting Reform Act of 1996 ("CCRRA"), Pub. L. No. 104-208, provides that "[a]ny person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer." 15 U.S.C. § 1681n(a). This section explicitly provides a private right of action for violations of Section 1681q, in addition to other FCRA provisions. "To act willfully, a defendant must knowingly and intentionally violate the Act, and it must also be conscious that its act impinges on the rights of others." Wantz v. Experian Info. Solutions, 386 F.3d 829, 834 (7th Cir. 2004) (internal quotation marks omitted).

Section 1681n(b), also added to the FCRA by the CCRRA, provides that "[a]ny person who obtains a consumer report from a consumer reporting agency under false pretenses or knowingly without a permissible purpose shall be liable to the consumer reporting agency for actual damages sustained by the consumer reporting agency or $1,000, whichever is greater." 15 U.S.C. §

1681n(b).  This section only provides a remedy for consumer reporting agencies, not for persons whose reports were obtained under false pretenses or without a permissible purpose.  <u>See Grismore v. United Recovery Sys., L.P.</u>, No. CV-05-2094-PHX-JAT, 2006 WL 2246359, at *4 (D. Ariz. Aug. 3, 2006).

Section 1681o(a) provides, in relevant part, that "[a]ny person who is negligent in failing to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer" for actual damages and reasonable attorney's fees.  15 U.S.C. § 1681o(a).  "Negligent" is accorded its ordinary meaning—"a failure to exercise reasonable care."  <u>Crabill v. Trans Union, L.L.C.</u>, 259 F.3d 662, 664 (7th Cir. 2001).

**<u>Supportkids's Cross-Motion for Summary Judgment</u>**

Supportkids's cross-motion for summary judgment will be denied.  To begin with, § 1681b(a)(3)(A) requires a nexus to a credit transaction, and, as the following analysis will show, there is no credit transaction here.  The relevant statutory text, slightly reorganized, is as follows:

> [A]ny consumer reporting agency may furnish a consumer report . . . [t]o a person which it has reason to believe intends to use the information
> (1) in connection with a credit transaction involving the consumer on whom the information is to be furnished <u>and</u>
> (2)involving the
> (a)extension of credit to or
> (b) review or collection of an account of
> the consumer.

15 U.S.C. § 1681b(a)(3)(A) (emphasis added).  Clearly, the

requirement that the agency have reason to believe the person requesting the report intends to use it "in connection with a credit transaction involving the consumer" applies to <u>both</u> of the permissible purposes, the "extension of credit" and the "review or collection of an account."

Supportkids's reply brief argues that "FCRA states a consumer report can be provided to anyone to whom the consumer reporting agency has reason to believe is involved in a credit transaction with the consumer or who is involved in the review or the collection of an account of, the consumer." (Def. Reply S.J. at 4.) But the argument fails because it ignores the critical fact that the statute uses the conjunctive word "and."

Supportkids cites no authority for its view that the collection of an account or debt need not bear a nexus to a credit transaction. Even the FTC, the proponent of the "judgment creditor theory," does not doubt that § 1681b(a)(3)(A) requires a nexus to a credit transaction. <u>See</u> Federal Trade Commission, <u>FCRA Staff Opinion: Brinckerhoff-Long</u>, July 6, 2000 (available at http://www.ftc.gov/os/statutes/fcra/long.htm) (last visited February 27, 2007) ("Section [1681b(a)(3)(A)] applies only to the review or collection of a <u>credit</u> account, as well as to an extension of credit to a consumer.").

Supportkids's proposed interpretation of § 1681b(a)(3)(A) is infirm for the additional reason that it would reduce the privacy

protections intended for persons who do not voluntarily enter into a credit transaction. Under Supportkids's view, a person requesting a credit report for the purpose of extending credit must satisfy the requirements of "in connection with a credit transaction" and "involving the extension of credit to the consumer." But a person requesting a credit report for the purposes of review or collection of an account need not establish that the consumer engaged in a credit transaction; the person requesting the report need only show the request to be in connection with an effort to collect a debt. The Seventh Circuit's teachings on "permissible purpose" indicate that individuals who do not consent to a transaction deserve greater, not lesser, privacy protections under FCRA. See, e.g., Cole v. U.S. Capital, Inc., 389 F.3d 719, 725 (7th Cir. 2004) ("Many of the enumerated permissible purposes set forth in § 1681b are transactions initiated by the consumer; these purposes therefore do not create significant privacy concerns"); accord Stergiopoulos v. First Midwest Bancorp., Inc., 427 F.3d 1043, 1047 (7th Cir. 2005) ("An entity may rely on subparagraph (3)(A) only if the consumer initiates the transaction. A third party cannot troll for reports, nor can it request a report on a whim. Rather, there must be a direct link between a consumer's search for credit and the bank's credit report request. If the connection between a consumer's search and a bank's request is clear, it is unlikely that the request will infringe the

consumer's privacy interests, for it will 'involve' the plaintiff directly.") (citing <u>Cole</u>, 389 F.3d at 725).

### **Prior Interpretations of "Credit Transaction"**
### **Were Superseded by 2003 Statutory Amendments**

Supportkids's claim that it had a permissible purpose is based on two sources of authority—the FTC's non-binding "FCRA Commentary" and non-binding case law from other jurisdictions. (Def. Mem. S.J. at 4-7.) The FTC's "FCRA Commentary" reiterates the agency's "judgment creditor theory," which states that a person attempting to collect a judgment has a permissible purpose to access a consumer report. 16 C.F.R. pt. 600, App. (1993). When the FTC developed its theory, the FCRA did not define the terms "credit" or "creditor." In the absence of a statutory definition of "credit" or "credit transaction," the theory was not patently unreasonable; to the contrary, a number of courts explicitly adopted the FTC's non-binding position. <u>See, e.g.</u>, <u>Baker v. Bronx-Westchester Investigations, Inc.</u>, 850 F. Supp. 260, 264 (S.D.N.Y. 1994); <u>Hasbun v. County of Los Angeles</u>, 323 F.3d 801 (9th Cir. 2003). But the FTC's "FCRA Commentary" and the judicial opinions endorsing the FTC's position are no longer persuasive because they do not take into account the December 2003 amendments to FCRA. The statutory definition of "credit" demands that a "creditor" grant rights to a "debtor" to defer payment of a "debt" or to incur debts and to defer payment of those debts. 15 U.S.C. § 1691a(d). Even if a child-support obligation is a debt for the purposes of the statute,

itself a debatable premise, <u>see</u> <u>Mabe v. G.C. Servs. Ltd. P'ship</u>, 32
F.3d 86, 88 (4th Cir. 1994), a typical child-support arrangement
does not involve one party granting rights to another to defer
payment. <u>Id.</u> Furthermore, in order to have a "credit
transaction," the person extending credit must satisfy the
statutory definition of "creditor." The FTC/<u>Baker</u> view that all
court-ordered child support obligations qualify as "credit
transactions" is not persuasive in light of the statutory
requirement that a creditor "regularly extend" credit. <u>See</u> 15
U.S.C. § 1681a(r) (adopting definition of "credit" and "creditor"
as defined by 15 U.S.C. § 1691a(d)-(e)). We do not see how a party
to a child-support order could satisfy that definition, and
certainly there is no evidence that Alisa Sidbury satisfied it in
this case.

Supportkids has not offered evidence that the alleged child
support plaintiff owed to Alisa Sidbury was a "credit transaction"
or that Sidbury was a "creditor" within the meaning of § 1681b(a).
Supportkids has therefore not shown a "permissible purpose," and
its cross-motion for summary judgment will be denied.

### **Plaintiff's Motion for "Partial Summary Judgment"**

Plaintiff is not entitled to "partial summary judgment" on the
issue of whether Supportkids had a permissible purpose. Rule 56(a)
does not authorize summary judgment on part of a claim. <u>Arado v.
General Fire Extinguisher Corp.</u>, 626 F. Supp. 506, 509 (N.D. Ill.

1985).  Neither does Rule 56(d) authorize a "partial summary judgment."  Id.

Plaintiff offers no evidence that would warrant entry of judgment on any count of the complaint.  For example, neither 15 U.S.C. § 1681n nor § 1681o is a strict-liability offense; a plaintiff must prove the FCRA violations were willful or negligent, respectively.  Section 1681n(a) provides consumers with a cause of action for "willful" violations of FCRA, but plaintiff has made only conclusory allegations of willfulness.  Case law from other jurisdictions suggests that a party does not willfully violate FCRA when it acts "under what is believed to be a proper purpose under the statute but which a court . . . later rules to be impermissible legally."  Duncan v. Handmaker, 149 F.3d 424, 429 (6th Cir. 1998).

Plaintiff has not adduced any facts or offered any legal argument to show the absence of a genuine dispute as to whether Supportkids was either willful or negligent.  The court will deny plaintiff's motion for "partial summary judgment."

However, Supportkids's cross-motion for summary judgment, although unsuccessful, was a proper motion.  In instances where a party properly yet unsuccessfully moves for summary judgment, Rule 56(d) permits a district court to issue an interlocutory, nonappealable order designating uncontroverted facts or governing legal principles for a case going forward.  Fed. R. Civ. P. 56(d); EEOC v. Sears, Roebuck & Co., 839 F.2d 302, 353 n.53 (7th Cir.

1988). "The purpose of this procedure is twofold: to salvage some of the judicial effort involved in the denial of a motion for summary judgment and to streamline the litigation process by narrowing the triable issues." <u>Republic Tobacco, L.P. v. North Atlantic Trading Co.</u>, 254 F. Supp. 2d 985, 997 n.13 (N.D. Ill. 2002).

In denying Supportkids's full-fledged motion for summary judgment, we have determined that it did not have a permissible purpose to access plaintiff's consumer report. In these circumstances, it is appropriate to salvage the time and effort put into the briefing and adjudication of the respective motions for summary judgment by issuing an order, pursuant to Rule 56(d), deeming it established that Supportkids did not have a permissible purpose under 15 U.S.C. § 1681b(a)(3)(A) to request or receive plaintiff's consumer report.

We emphasize that this order does not establish that Supportkids is liable under any count of the complaint. Plaintiff still has the burden of establishing all of the elements of an individual claim, such as proof of the necessary mental state and, in several instances, proof of actual damages. Neither does this order preclude Supportkids from rebutting any remaining elements of plaintiff's claims or from asserting any defenses not inconsistent

with this order.[5]

## CONCLUSION

For the reasons explained above, defendant Supportkids's cross-motion for summary judgment is denied, plaintiff's motion for "partial summary judgment" is denied, and the respective motions to strike are denied. Pursuant to Rule 56(d), it is deemed established that Supportkids did not have a permissible purpose under § 1681b(a)(3)(A) to access plaintiff's consumer report.


DATE:      February 28, 2007


ENTER:     _____

           John F. Grady, United States District Judge

---

[5]    Paragraph 12 of the complaint uses the phrase "credit purposes," while Section 1681b(a)(3)(A) uses the phrase "in connection with a credit transaction." In responding to ¶ 12, Supportkids apparently recognized that the phrase "credit purposes" is ambiguous.  While admitting that it did not request the report for "credit purposes," it further stated that it had a permissible purpose because it was attempting to collect a debt owed by plaintiff.  (Def. Resp. Pl. Mot. Strike ¶ 12.)  Plaintiff argues, at numerous points in his filings, that Supportkids's admission that the report was not requested for "credit purposes" precludes Supportkids from arguing that it had a permissible purpose.  We disagree.  Rule 8 provides that pleadings shall be construed "as to do substantial justice."  See Fed. R. Civ. P. 8(f).  Because Supportkids was obviously seeking to preserve, not waive, its right to assert a defense of permissible purpose, it would be unjust to construe its response to an ambiguous allegation as a binding judicial admission.